**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

FILED

FEB 2 1 2019

CLERK, US DISTRICT COURT
NORFOLK, VA

JODI A. CRAWFORD,

        Plaintiff,

v.                                              Action No. 2:18cv288

NANCY BERRYHILL,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Jodi A. Crawford ("Crawford") brought this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of defendant Nancy Berryhill, the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), denying her 2014 claim for disability insurance benefits under Title II of the Social Security Act. ECF No. 6.

The Commissioner filed a motion and supporting memorandum to dismiss Crawford's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. ECF Nos. 11–12. The Commissioner asserts that the Court lacks subject matter jurisdiction to review her denial of Crawford's 2014 application for benefits, because that denial was based on administrative *res judicata* related to the denial of Crawford's 2011 application for benefits. *Id.* Crawford has not filed a response to the motion to dismiss, and the time for filing has expired. This matter is now ripe for decision.

An order of reference assigned this matter to the undersigned. ECF No. 15. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby **RECOMMENDED** that the Commissioner's motion to

dismiss, ECF No. 11, be **GRANTED**, and that Crawford's complaint, ECF No. 6, be **DISMISSED**.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

This case is an appeal from the Commissioner's denial of Crawford's 2014 application for benefits. That decision rested on the application of administrative *res judicata*, which the Commissioner applied because SSA previously denied Crawford's 2011 application for benefits concerning the same time period and disabling conditions at issue in Crawford's 2014 application.

On June 23, 2011, Crawford filed her first application for disability insurance benefits for the period from an alleged onset date of July 16, 2010, through a "date last insured" of December 31, 2010, at which time she was 46 years old. R. 4–6.[1] She alleged that she was disabled due to the condition of her arms, neck, and hands, the replacement of her C5 and C6 neck vertebrae, and a stomach ulcer. R. 5, 42. Her neck surgery occurred on July 16, 2010; an "MRI of her cervical spine on [December 15, 2010] . . . revealed post-surgical changes and a focal lordotic-deformity at C5–6," and an exam on December 21, 2010, "shows diffuse neck tenderness and normal motor function." R. 7, 103–05, 218. She was also diagnosed with chronic obstructive pulmonary disease ("COPD") on October 28, 2010. R. 7.

On September 16, 2011, a Social Security disability examiner concluded that Crawford was not disabled for disability insurance purposes. R. 11–13. The examiner noted that Crawford's primary diagnosis was severe spine disorders with a secondary diagnosis of severe COPD, and

---

[1] "R." refers to the paper record titled "Court Transcript" transmitted to this Court from the Office of Appellate Operations of the Social Security Administration under a certification page dated October 4, 2018, which is consecutively paginated from 1 through 6320.

there was no evidence of a stomach ulcer. R. 8, 12. The examiner found that Crawford was capable of light work with some limitations as of December 31, 2010, and that her "condition was not disabling on any date through December 31, 2010." R. 10, 12. The notice that Crawford's claim was disapproved advised that she had 60 days to appeal the September 16, 2011 decision. R. 13–14. Crawford did not appeal the denial of her first application for benefits.

On May 6, 2014, Crawford filed a second application for disability insurance benefits based on her cervical spine surgery, COPD, and sleep apnea. R. 246. As with her first application, the alleged onset date was July 16, 2010, and the date last insured was December 31, 2010.[2] R. 246. A disability examiner again determined that Crawford's "condition was not disabling on any date through [December 31, 2010]," and denied her second application on November 13, 2014.[3]

_____

[2] An "Application Summary for Disability Insurance Benefits" contains information obtained by SSA during a July 1, 2014 conversation with Crawford, apparently regarding her second application. R. 352. That summary reflects that she "became unable to work because of [her] disabling condition on July 16, 2010," and that she filed a previous application for benefits with SSA, but does not reflect that she requested SSA to reconsider or reopen that first application. R. 352. However, a "Work Activity Report – Self-Employment" form, dated July 16, 2014, states that Crawford "last worked on December 26, 2013," and that she had "not worked in any capacity whatsoever since December 26, 2013." R. 366, 369–70. A "Work History Report" also states that Crawford worked as a certified nursing assistant home health aide from March 2010 through December 2013. R. 371. As reported by Crawford, that work of caring for patients in their homes and assisting them with household tasks included six hours of standing or walking per day, and lifting 25 pounds for one-third to two-thirds of the work day. R. 372. A "Function Report" completed by Crawford, dated August 25, 2014, states that she was taking medication for "severe neck pain," she could not "turn [her] head up and down or left and right without a lot of pain," and that "the pain goes down [her] arms . . . mak[ing] it hard to lift, carry, and reach." R. 377. She also reported that she was "short of breath with COPD," had swollen knees and feet "that makes it hard to stand and walk for long," could only do light chores for 10–15 minutes before needing to rest, and did not "go out much . . . due to pain." R. 377, 382.

[3] Crawford was briefly represented by counsel in connection with this claim, but it appears that she did not retain counsel until after she filed her second application in May 2014, and that her counsel withdrew from representation on November 18, 2014, shortly after her second application was denied but before she filed for reconsideration. R. 278, 291. She retained a different attorney in September 2015, who was still identified as her representative as of the Appeals Council

R. 256, 280–81. The examiner noted that Crawford "was not diagnosed with sleep apnea until after her [date last insured]," her "neck surgery was without complication," and "[w]hile it is likely she would experience some limitations due to cervical spine [degenerative disc disease] and COPD, records indicate that they would not be of a disabling severity."[4]  R. 252.

Crawford filed for a reconsideration in December 2014, claiming that she disagreed with the decision because she "had two operations on [her] cervical spine with no relief," as well as COPD and sleep apnea, and that there was a change in her condition on October 10, 2014, due to nerve damage in her left knee and torn cartilage in her right knee.[5]  R. 259, 272, 292, 412.   A disability examiner denied her reconsideration on May 26, 2015, because the evidence in the record was "sufficient and consistent to support the proposed determination."  R. 271.  The denial letter stated: "We have determined that your condition was not disabling on any date through [December 31, 2010], when you were last insured for disability benefits."  R. 281, 294.

Crawford then filed a request in July 2015 for a hearing before an administrative law judge to appeal the denial of her second application. R. 276, 300.  She alleged that she disagreed with

---

decision in March 2018. R. 2, 314–15.

[4] The examiner did not state the date of the sleep apnea diagnosis, but it appears that the diagnosis occurred in 2014. Crawford's records note that a sleep study on January 27, 2014, "documented the presence of mild obstructive sleep apnea/hypopnea syndrome." R. 922, 2192–93. Notes from Crawford's visits with "Pulmonary and Critical Care Specialists" in October 2010 – less than two months before her date last insured – noted stage one COPD, but not sleep apnea. R. 64–66.

[5] Although not explicitly stated by Crawford in this document, it appears that the "two operations on [her] cervical spine" refer to a pair of surgeries in 2014, on February 25, 2014, and October 14, 2014. R. 292, 413, 820–22. Crawford reported a cervical spine surgery on March 25, 2014, in her "Disability Report – Appeal" form, which appears to relate to the February 25 surgery. R. 412, 415. These surgeries were in addition to her initial cervical spine surgery on July 16, 2010, which was before her date last insured. R. 7. Regarding the knee issues mentioned in her reconsideration request, Crawford had a knee surgery on March 17, 2015, while her second application for disability benefits was pending. R. 1791–93, 1800.

the determination because "I am unable to hold a job due to my two neck surgeries, knee surgery I am unable to walk or stand for any long periods of time, I cannot use my arms or hands, I have stomach problems and back problem." R. 300–01. In a "Disability Report – Appeal" form, Crawford reported that her condition changed on April 17, 2015, due to a knee surgery on her right knee, as well as a torn ACL, two broken toes, a "sleep disorder," and worsening COPD.[6] R. 429–30.

On February 10, 2017, an administrative law judge ("ALJ") dismissed Crawford's request for a hearing and advised her of her right to dispute that decision before the Appeals Council. R. 273–74. The ALJ noted that the September 16, 2011 denial of Crawford's first application became a final determination after Crawford did not request a review of that decision. R. 276. He concluded that the "deadline for requesting review should not be extended under Social Security Ruling 91-5p because at the time of the previous determination, the claimant did not have or allege having a mental impairment," and "none of the conditions for reopening set forth in 20 [C.F.R. §] 404.988 is present in this case."[7] R. 276.

---

[6] This document itself does not appear to be dated, R. 429–36, but the index states that this disability report is dated July 13, 2015. Record Index p. 2. Crawford alleged that her knee surgery occurred on April 17, 2015, but records from the surgeon reflect that this surgery occurred on March 17, 2015. R. 1791–93, 1800.

[7] Social Security Ruling 91-5p provides for an adjudicator to determine "whether a claimant lacked the mental capacity to understand the procedures for requesting review," and thus whether good cause exists to extend the time to request review, and, if so, to "take the action which would have been appropriate had the claimant filed a timely request for review." Policy Interpretation Ruling Titles II & XVI: Mental Incapacity & Good Cause for Missing the Deadline to Request Review, SSR 91-5p (S.S.A. July 1, 1991). 20 C.F.R. § 404.987 states that the "conditions under which [SSA] may reopen a previous determination or decision, either on [its] own initiative or at [a claimant's] request, are explained in [20 C.F.R.] § 404.988." That regulation provides that a determination "may be reopened—(a) Within 12 months of the date of the notice of the initial determination, for any reason; (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or (c) At any time

The ALJ next determined that "no new and material evidence has been submitted" since the September 16, 2011 determination, there were no intervening changes in the applicable legal framework, and the "additional evidence submitted with this claim is either duplicative, already referenced in the medical records submitted in the prior claim or for treatment after the date the claimant was last insured for disability benefits." R. 276–77. The ALJ concluded that "the claimant's rights on the same facts and on the same issues are involved and the doctrine of *res judicata* applies," and therefore denied the request for a hearing. R. 277.

On April 5, 2017, Crawford submitted a request for review of the ALJ's order of dismissal.[8] R. 342. In a letter from her attorney accompanying that request, Crawford asserted both that *res judicata* did not apply and that "there is significant evidence that is new and material and predates the claimant's date last insured." R. 344. Crawford acknowledged that her second application alleged the same disability onset date as her first application, but claimed that the denial of her first application "never reached administrative or judicial finality, and accordingly, the doctrine of *res judicata* cannot apply in this case." R. 344. She further alleged that her second application was filed within four years of the denial of her first application, and that she should have been "afforded an opportunity to present good cause for reopening [the first application] because new and material evidence has been submitted, including medical records demonstrating cervical degenerative disk disease requiring cervical discectomy and disc arthroplasty as well as chronic obstructive pulmonary disease with emphysema prior to her date last insured ([December 31,

---

if" one of a variety of factors are present, such as fraud or corrections regarding earnings and insured status. 20 C.F.R. § 404.988.

[8] Crawford also filed a motion requesting the ALJ to vacate his dismissal order. R. 349–51.

2010])."[9] R. 344–45.

On March 26, 2018, the Appeals Council denied Crawford's request for a review of the ALJ's February 10, 2017 dismissal, because it "found no reason under [its] rules to review" that decision. R. 1; ECF No. 6-1.

On August 6, 2018, Crawford filed her *pro se* complaint in this Court against the Commissioner.[10] ECF No. 6.  She noted that her complaint sought "review of a decision regarding Disability Insurance Benefits under Title II of the Social Security Act" pursuant to 42 U.S.C. § 405(g).  *Id.* at 2.  In the section of the form complaint titled "Statement of Claim," Crawford did

---

[9] Crawford's letter cited 20 C.F.R. § 404.989(a)(1) to support her request to reopen the initial determination. R. 345. That provision states that SSA "will find that there is good cause to reopen a determination or decision if . . . [n]ew and material evidence is furnished." 20 C.F.R. § 404.989(a)(1). Generally, 20 C.F.R. § 404.987(a) provides that if a claimant "do[es] not request further review within the stated time period, [the claimant] lose[s] [his or her] right to further review and that determination or decision becomes final." A final determination may be reopened and revised by SSA under certain conditions listed in 20 C.F.R. § 404.988, including that a determination "may be reopened . . . [w]ithin four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case." 20 C.F.R. § 404.988(b). The Social Security Act "precludes the reopening of an application for benefits when more than four years has elapsed since the initial claim was denied." *Huff v. Barnhart*, 126 F. App'x 85, 87 (4th Cir. 2005) (citing *King v. Chater,* 90 F.3d 323, 325 (8th Cir.1996), for the proposition that "reopening more than four years after initial denial, absent clear error, would exceed ALJ's authority"). The September 16, 2011 denial of Crawford's first application occurred within four years of her second application on May 6, 2014, but her second application did not include a request to reopen her first application, and her April 5, 2017 letter was well beyond the four-year period to make such a request to reopen the 2011 denial. In any event, 42 U.S.C. § 405(g) does not provide this Court with jurisdiction to review SSA's decision refusing to reopen a claim absent a question of constitutional significance, and no such question is alleged here. *See, e.g.*, *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

[10] Crawford initially filed applications to proceed *in forma pauperis* ("IFP") on May 30, 2018, and June 27, 2018; both applications were denied, and she was directed to remit the filing and administrative fees if she "would like the Court to consider her submission" of her proposed complaint, which was attached to her first IFP application. ECF Nos. 1–4. Crawford submitted the fees on August 6, 2018, within 30 days of the Court's July 9, 2018 order denying her second IFP application. ECF Nos. 5–6.

not check either box, but wrote that her "claim was denied because I did not meet the criteria, because I was able to still walk" next to the pre-printed statement, "The Commissioner found the following facts to be true, but these facts are not supported by substantial evidence in the record." *Id.* at 3. She requested a modification of the Commissioner's decision and a grant of maximum insurance benefits, retroactive to the date of initial disability. *Id.*

On October 15, 2018, the Commissioner filed a motion to dismiss Crawford's complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[11]  ECF No. 11.  In her supporting memorandum, the Commissioner argues that this Court lacks subject matter jurisdiction to review her decision to apply the doctrine of *res judicata* to bar Crawford's second application for disability benefits.  ECF No. 12 at 1, 3.  First, the Commissioner asserts that her 2011 decision denying Crawford's initial application was preclusive of Crawford's later application, because Crawford never sought review of that denial. *Id.* at 6.  Second, the Commissioner contends that she properly applied the administrative bar of *res judicata* to Crawford's second application for disability benefits, because the second application presented the same claim as the first. *Id.*  In particular, the second application concerned the same time period as the first, from July 16, 2010, to December 31, 2010, and presented the "same general issue of whether [Crawford] was disabled within that time." *Id.*

In support of the memorandum, the Commissioner attached the declaration of Janay Podraza ("Podraza"), the Chief of Court Case Preparation and Review Branch 2 of the Office of Appellate Operations of the Social Security Administration.  ECF No. 12-1 at 1.  Podraza set out

---

[11] The motion to dismiss included a separately filed notice, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), providing Crawford with notice of how to timely respond thereto and the potential consequences for failing to do so.  ECF No. 13.

the Social Security regulations governing *res judicata*, namely 20 C.F.R. §§ 404.957, 404.958, 404.959, and 404.967. *Id*. at 2–3. The declaration further stated that: Crawford's initial claim for disability benefits was denied on September 16, 2011; there was no administrative appeal of that decision; Crawford's second claim for benefits was denied on November 13, 2014, and the reconsideration was denied on May 26, 2015; an ALJ denied Crawford's request for a hearing on February 10, 2017, under the doctrine of *res judicata*; and the Appeals Council denied Crawford's request for review on March 26, 2018. *Id*. at 3.

Crawford did not file a response to the Commissioner's motion to dismiss. The motion to dismiss was referred to the undersigned. ECF No. 15.

## II.    ANALYSIS

### A.    The general standard for Rule 12(b)(1) motions to dismiss

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to challenge a complaint on the ground that a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden to prove that the court has subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id*. In considering a motion to dismiss under Rule 12(b)(1), a court may consider evidence extrinsic to the complaint, such as the declaration and attachments to the Commissioner's memorandum in this case. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A court must construe the pleadings of a *pro se* plaintiff liberally, *Erickson v. Pardus*, 551

9

U.S. 89, 94 (2007); however, when considering a motion to dismiss, a court "must evaluate the *pro se* plaintiff's pleadings according to the standards set forth in the Federal Rules of Civil Procedure." *T.W. v. Hanover Cty. Pub. Sch.*, 900 F. Supp. 2d 659, 663 (E.D. Va. 2012) (citation omitted). The Court "may not act as the litigant's advocate and construct legal arguments that the plaintiff has not made." *Id.* (citations omitted).

**B.** **This Court lacks jurisdiction because the Commissioner properly applied *res judicata* to deny Crawford's second application based on the denial of her first application.**

    **1.** **In general, a district court does not have jurisdiction to review a final decision of the Commissioner based on administrative *res judicata*, unless (1) the claims are not the same in the successive application or (2) SSA reopened its determination of an earlier application.**

Section 405(g) of title 42, United States Code, authorizes judicial review in federal district court of a final decision of the Commissioner. That statute and 42 U.S.C. § 405(h)[12] have a "combined effect" of "establish[ing] a power in the [Commissioner] to deny any social security claim on the basis that it has earlier been denied on the merits by a final administrative decision, i.e., to apply administrative res judicata in bar." *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir. 1981); *see also Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987) (noting that it is "well-established that fundamental and familiar principles of *res judicata* apply in Social Security disability cases," and that 42 U.S.C. § 405(h) provides "that *res judicata*

---

[12] Section 405(h) of title 42, United States Code, states:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

prevents reappraisal of both the Secretary [of Health and Human Services'] findings and his decision in Social Security cases that have become final").

If there has been a "final administrative decision denying a claim on the merits," and the claimant files a subsequent claim, the Commissioner "may properly apply administrative res judicata in bar only if it is the 'same' claim earlier denied," which is "determined according to general principles of res judicata respecting the scope of a claim for purposes of merger and bar as adapted to the social security claim context." *McGowen*, 666 F.2d at 65; *see also* 20 C.F.R. § 404.957(c)(1) (providing that an ALJ "may dismiss a request for a hearing" if the judge decides that the "doctrine of res judicata applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action").

"*Assuming that the same claim is involved*, and unless a constitutional objection to applying res judicata is raised in the district court,[13] the district court is *without jurisdiction* under 42 U.S.C. [§] 405(g) to engage in judicial review either of a decision by the [Commissioner] not to reopen the claim, or to apply administrative res judicata as a bar to it." *McGowen*, 666 F.2d at 65 (citations omitted) (emphases added); *see also Califano v. Sanders*, 430 U.S. 99, 107–09 (1977) (concluding that the predecessor to 42 U.S.C. § 405(g) did not provide subject matter jurisdiction for a district court to review the decision of the Secretary of Health and Human Services denying a petition to reopen a previously-decided disability claim). The district court "has jurisdiction to determine, as appropriate, whether res judicata has properly been applied," and is "free to make its independent determination, subject to appellate review, of the jurisdictional questions, including the scope of

---

[13] Crawford's filings, even liberally construed as those of a *pro se* party, do not allege any constitutional objection to applying *res judicata* here, so this issue is not presented in this case.

successive claims for res judicata purposes . . . without regard to any determinations or assertions by the [Commissioner] respecting those matters." *McGowen*, 666 F.2d at 66.

Thus, if the Commissioner has applied *res judicata* to bar a subsequent claim that is the same as an earlier claim for which there was a final administrative decision, this Court lacks jurisdiction under 42 U.S.C. § 405(g) to review that decision. There are, however, situations in which this Court can exercise judicial review of the Commissioner's decisions based on *res judicata*.

The first situation in which this Court retains jurisdiction is that the subsequent claim is not the same as the one that was earlier finally denied. "[I]f administrative res judicata has been applied in bar of a subsequent claim which, properly assessed, is not the same for res judicata purposes, jurisdiction to engage in judicial review exists." *Id.* at 65. "In that situation the subsequent claim is necessarily, in legal contemplation, a different one whose merits have never been addressed administratively," so the Commissioner's "decision denying the claim was one as to which the claimant was entitled to a hearing and hence, to judicial review of the denial." *Id.*

The other situation in which this Court can exercise judicial review occurs when the claim, or a portion of it, has been reopened by SSA. "[E]ven though the subsequent claim be the same claim for res judicata purposes, if it has nevertheless been reconsidered on the merits to any extent and at any administrative level, it is thereupon properly treated as having been, to that extent, reopened as a matter of administrative discretion under 20 C.F.R. [§] 404.989 (1981)," in which case a "final decision of the Secretary denying the claim is also subject to judicial review to the extent of the reopening, without regard to the expressed basis for the Secretary's denial." *Id.* at 65–66. In this situation,

the district court has jurisdiction to determine, as appropriate, whether res judicata

has properly been applied, or whether, though res judicata might properly have been applied, the claim has nevertheless been reopened. In this the court simply exercises its inherent jurisdiction to determine its own jurisdiction. If the court determines that jurisdiction exists either because administrative res judicata was not properly applied, or because the denied claim has been either formally or by legal implication reopened, it may then of course judicially review the Secretary's final decision denying the claim.

*Id.* at 66.

Accordingly, for this Court to determine whether it has jurisdiction to review the Commissioner's decision applying *res judicata*, it must first decide whether "(1) the successive claims were the same claim for res judicata purposes and (2) the original claim was not administratively reopened by considering it on the merits." *Id.* As explained below, neither situation is present in this case to provide jurisdiction to review the Commissioner's application of administrative *res judicata*.

### 2. The same claim was presented in both of Crawford's applications for benefits.

As a general matter, the

doctrine of res judicata, or claim preclusion, is applied to bar a suit in light of a prior judgment when three elements are demonstrated: (1) that the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) that the parties are identical, or in privity, in the two actions; and (3) that the claims in the second matter are based upon the same cause of action involved in the earlier proceeding—*i.e.,* the claims arise out of the same transaction or series of transactions, or the same core of operative facts.

*Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016) (citation and quotation marks omitted).

Here, the denial of Crawford's first application was on the merits, because the disability examiner reached a substantive decision regarding Crawford's eligibility for disability benefits, and was final, because Crawford did not appeal that decision. The parties are also the same in both of Crawford's applications for disability benefits. Accordingly, under *McGowen*, the only

13

element to be decided is whether the claims in Crawford's first and second applications were the same for *res judicata* purposes.

Two claims are the same for Social Security *res judicata* purposes when they are based on, for example, the same source of entitlement, the same time period, and the same alleged disabling conditions. *See, e.g., McGowen*, 666 F.2d at 66–67; *Albright v. Comm'r of Social Sec. Admin.*, 174 F.3d 473, 476 n.4 (4th Cir. 1999).

In *McGowen*, the claimant brought successive applications for benefits under the same source of entitlement:  surviving child benefits as the son of Boliver McGowen ("Boliver"). *McGowen*, 666 F.2d at 63.  SSA denied his claim in 1976 for failure to establish that he was Boliver's son in the manner required by the Social Security Act. *Id.* McGowen applied again in 1978, and SSA denied the claim, "finding that the 1976 determination applied because no new issues had been presented." *Id.* McGowen "sought reconsideration of the denial and presented further evidence that [Boliver] had orally acknowledged claimant to be his son." *Id.* The agency denied the claim because "he had merely established that [Boliver] was his biological father while failing to present any new and material evidence showing regular and substantial contributions by [Boliver] for claimant's support" as required by the Social Security Act, finding that, despite McGowen's assertions, there was no new and material evidence to warrant reopening the prior determination. *Id.* at 63–64.

The Fourth Circuit concluded that the district court properly dismissed the case for lack of jurisdiction to review the denial based on *res judicata*, because "[f]rom the record before the district court it conclusively appeared that, for res judicata purposes, claimant has advanced but one claim.  This was a claim of entitlement under the Social Security Act to insurance benefits as the surviving dependent child of a particular insured wage earner, Boliver." *Id.* at 66.  The

14

determination that the claims were the same in 1976 and 1978 was "not affected by the fact that following denial on the merits of the claim as originally presented, the claimant presented 'new and material' evidence tending to establish that he was the wage earner's dependent natural child and new legal theories of dependency based upon the intestacy laws of two states (alternatively)." *Id.* at 67.

In *Albright*, the Fourth Circuit noted that an administrative law judge correctly determined that a claimant's application was precluded by a prior denial decision, to the extent the prior decision included a portion of the same time period of disability alleged in the later application. 174 F.3d at 476 n.4. Albright's first application for disability benefits was denied, based upon a finding that he was not disabled through May 28, 1992, the date of the ALJ's decision. *Id.* at 474. He filed additional applications later in 1992, alleging that he was disabled beginning on March 31, 1990, the same onset date for his disability alleged in his first application. *Id.* at 474, 476 n.4. SSA considered those "applications to be new claims, relating to Albright's condition subsequent to the prior adjudication, *i.e.,* from May 29, 1992, onward." *Id.* at 474. Albright appealed the denial of his second claim. *Id.* at 474–75.

The court in *Albright* first recognized that "SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability," and that "[r]es judicata cannot be applied to the unadjudicated period." *Id.* at 476, 476 n.4 (citation and quotation marks omitted). The court concluded that SSA improperly collapsed Albright's second claim into his first for *res judicata* purposes.[14] *Id.* at 476. However, the court noted that SSA correctly

---

[14] The ALJ who reviewed Albright's second claim denied it, following a policy that required SSA adjudicators to apply the disability finding from prior determinations to subsequent claims

applied *res judicata* to the portion of Albright's second claim that encompassed the time period at

issue in his first claim:

> Of course, to the extent that a second or successive application seeks to *relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of preclusion apply with full force.* Indeed, in the case at bar, Albright's second application alleged the onset of disability as being March 31, 1990, the same as in his first application. Accordingly, the second ALJ dismissed Albright's claims insofar as they related to the period from March 31, 1990, through May 28, 1992 (the date of the final decision in the first proceeding). The ALJ's dismissal was entirely proper, and it is not contested on appeal.

*Id.* at 476 n.4 (emphasis added); *see also Estep v. Chater*, No. 94-2060, 1995 WL 761104, at *2

(4th Cir. Dec. 7, 1995) (citing *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42–44 (4th Cir. 1990), for the

proposition that, when applying *res judicata* to a Social Security claimant's prior denials, "claims

precluded include those that existed at the time of the first suit and 'might have been offered' in

the same cause of action").

    In *Cleaton v. Secretary, Department of Health and Human Services*, the Fourth Circuit

affirmed a district court decision dismissing a Social Security appeal based on administrative *res*

*judicata* when the first and second applications alleged the same disabling conditions.[15]  815 F.2d

295, 299 (4th Cir. 1987). A claimant, Gwaltney, first alleged disability beginning on January 13,

1978, due to back injuries. *Id.* That claim was initially denied, but, on remand to an administrative

law judge, Gwaltney presented additional evidence that he "suffered from high blood pressure,

gout, [and] an enlarged liver," as well as the back injury. *Id.* His first claim was denied on remand,

---

regarding an "unadjudicated period" unless there was new and material evidence. *Albright*, 174
F.3d at 474–75. The Fourth Circuit concluded that this SSA policy did not accurately implement
its caselaw, because the policy "operates to mechanistically merge two claims into one," whereas
a later claim for a previously unadjudicated period should be evaluated separately. *Id.* at 476.
[15] This case involved three separate claimants:  Everett Cleaton, Milton Gwaltney, and Henry
Taylor.  815 F.2d at 297.

16

and he did not appeal. *Id.*

Approximately two years later, Gwaltney filed a second claim for benefits, "alleging disability from January 13, 1978, due to high blood pressure, gout, an enlarged liver, and a back injury." *Id.* The Secretary initially denied the second claim "because Gwaltney had not established he was disabled prior to the time his insured status expired," but, on reconsideration, the Secretary denied the second claim based on *res judicata* from his first claim. *Id.* Gwaltney appealed to the district court, which dismissed the case for lack of subject matter jurisdiction after determining that *res judicata* had been properly applied by SSA. *Id.* The Fourth Circuit affirmed the dismissal, because Gwaltney did not present "new and material evidence" and because the "disabling conditions alleged in the second application were essentially the same as those presented in the proceedings that followed his initial application." *Id.*

Here, Crawford's two applications presented the same claim for *res judicata* purposes. Her claims were both based on the same source of entitlement, Social Security Disability Insurance under Title II of the Social Security Act. *See, e.g.*, R. 4 (claim type identified as Title II), R. 257 (same). Her claims both covered the same time period, as both had the same alleged date of onset, July 16, 2010, and the same date last insured, December 31, 2010. R. 5, 246. Her claims alleged the same disabling conditions, namely: neck, arm, and back pain; spine surgery; COPD; and stomach issues. *See, e.g.*, R. 5, 8, 246, 300–01.

To the extent her second claim differed from her first, the differences concerned diagnoses or procedures that occurred after her date last insured, so they were not relevant to determining her entitlement to Title II disability benefits. *See Johnson v. Barnhart*, 434 F.3d 650, 655–56 (4th Cir. 2005) ("To qualify for [disability insurance benefits], [a claimant] must prove that she became disabled prior to the expiration of her insured status."); *see also* 20 C.F.R. § 404.131(a) ("To

establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled."). In particular, Crawford's second claim included sleep apnea, but it appears she was not diagnosed with that condition until January 2014. R. 246, 922, 2192–93. Crawford's second claim also involved two spine surgeries in 2014 and a knee surgery in 2015. R. 413, 429–30, 820–22. The ALJ noted that this "additional evidence submitted" with the second claim was "for treatment after the date the claimant was last insured for disability benefits," which was December 31, 2010. R. 276–77.

Accordingly, the Commissioner correctly determined that Crawford's two claims were the same for *res judicata* purposes. Because Crawford's successive claims were the same, this case is not within the first *McGowen* situation that would provide jurisdiction to review an SSA decision that was based on *res judicata*.

### 3. Crawford's claims were not administratively reopened to defeat the application of *res judicata*.

When a later claim is the same as an earlier claim, *res judicata* does not apply if the later claim "has nevertheless been reconsidered on the merits to any extent and at any administrative level," in which case it is "properly treated as having been, to that extent, reopened as a matter of administrative discretion under 20 C.F.R. [§] 404.989 (1981)." *McGowen*, 666 F.2d at 65. Determining whether Crawford's claim was reopened first requires an examination of the types of actions that have previously been found to constitute a reopening or reconsideration. As explained below, the main consideration is whether the final decision of SSA, whether from an ALJ or the Appeals Council, reopened the earlier claim; merely assessing the evidence in a later claim to determine whether *res judicata* applies does not constitute an administrative reopening.

For example, in *McGowen*, the Fourth Circuit concluded that SSA did not reopen a claim,

even when the ALJ analyzed new evidence and the Appeals Council determined that good cause
had not been shown to reopen. 666 F.2d at 67–68. In assessing McGowen's second application,
SSA initially denied the claim, finding that its earlier decision applied "because no new issues had
been presented," and then denied the claim on reconsideration because he had not presented
evidence to establish that he was a surviving child under the Social Security Act. *Id.* at 63.

McGowen was then granted a hearing before an ALJ, at which he presented evidence about
his paternity as well as legal arguments concerning his legitimacy under the potentially applicable
laws of Maryland and Michigan. *Id.* The ALJ concluded McGowen was Boliver's biological
child, but that no new and material evidence was submitted to establish that he was a surviving
child under the Social Security Act, "and that, therefore, the Administration's previous decision to
deny benefits was res judicata on the issue of claimant's entitlement to benefits." *Id.* "The
administrative law judge made no findings with respect to the other evidence or arguments
submitted by claimant." *Id.*

The Appeals Council affirmed the ALJ's order dismissing McGowen's claim, concluding
that "there was no evidence submitted on the issues of support or written acknowledgement 'so
new and material as to warrant a reopening of the prior determination.'" *Id.* at 63–64. The Appeals
Council further noted that "the law of Michigan would be controlling on the issue whether claimant
was 'legitimate' so as to be entitled to benefits under the Act and that under Michigan law claimant
could not establish his legitimacy." *Id.* McGowen appealed to the district court, which dismissed
the complaint because "the Secretary's determination of administrative res judicata deprived it of
jurisdiction over the majority of issues raised in claimant's complaint." *Id.*

On appeal, the Fourth Circuit affirmed the district court. *Id.* at 66. That court rejected the
argument that, by "addressing [McGowen's] 'new' evidence of biological parentage through

19

acknowledgement and of substantial support by the wage earner, and in addressing [his] 'new' legal theories based upon the intestacy laws of Maryland and Michigan, the ALJ and the Appeals Council in legal effect, though not formally, reopened the claim." *Id.* at 67. The Fourth Circuit explained why such review did not reopen McGowen's claim:

> Of necessity when a social security claimant presents any claim that is arguably the same one earlier denied on the merits, the Secretary must in fairness look far enough into the proffered factual and legal support to determine whether it is the same claim, and if so, whether it should nevertheless be reopened as a discretionary matter. That the evidence offered is "new and material" may have significance on both points. If it is sufficiently "new" it may reveal the existence of a different claim, hence the inapplicability of res judicata. Or, though "new and material" it may nevertheless be revealed as going only to establish the same claim earlier denied, so that res judicata is legally available to bar its consideration on the merits. Finally, even if merely probative of the same claim, it may be sufficiently "new and material" that, considered with other factors, it justifies reopening the claim as a discretionary matter. See 20 C.F.R. [§] 404.989(a)(1) (1981).
>
> In fairness to the claimant, the results of this threshold inquiry may be reported as a prelude to reporting the dispositive administrative action taken. See 20 C.F.R. [§§] 404.992(a) (1981). Thus, an ALJ may state in a formal decision, as here, that though the claimant had presented sufficient new evidence to establish biological parentage of the wage earner, his new evidence of dependency was not sufficiently "new and material" to warrant reopening and that it went merely to establish the same claim for res judicata purposes. *When, as here, this is followed by a specific conclusion that the claim should be denied on res judicata grounds, the threshold inquiry into the nature of the evidence should not be read as a reopening of this claim on the merits.*
>
> We think the same assessment is proper in respect of the Appeals Council's letter . . . explaining the basis of its affirmance of the ALJ's dismissal on res judicata grounds and its determination that the evidence newly proffered did not justify reopening.[16]

*Id.* at 67–68 (emphasis added); *see also Huff v. Barnhart*, 126 F. App'x 85, 87–88 (4th Cir. 2005)

---

[16] The Fourth Circuit expressly did not decide whether jurisdiction would have existed to review the Appeals Council's conclusion that Michigan law would have controlled "the question of claimant's legitimacy, hence dependency, and that it would not support the claim," because McGowen expressly abandoned that theory. *McGowen*, 666 F.2d at 68.

(concluding that the district court "correctly decided all the issues before it," including the district court's rejection of the claimant's argument that the ALJ "'constructively reopened' his prior benefits claim . . . by granting a hearing and considering new evidence on the merits," and that, even if the ALJ desired to reopen the claim, he could not, because the Social Security Act "precludes the reopening of an application for benefits when more than four years has elapsed since the initial claim was denied"); *Allen v. Astrue*, No. 6:10cv35, 2012 WL 1941402, at \*7–10 (W.D. Va. May 29, 2012) (concluding that an ALJ did not reopen an earlier claim or make a determination on the merits of a new claim by analyzing and evaluating treatment records submitted in the new claim, where the ALJ "expressly declined to reopen the claim," "specifically held that res judicata applies," did not hold a hearing, and "did not consider in detail the medical evidence or make a determination on the merits"); *cf. Tynes v. Comm'r of Soc. Sec.*, No. 4:10cv146, 2011 WL 6981194, at \*2 n.7 (E.D. Va. Dec. 12, 2011) ("Because the ALJ considered Tynes's 2007 [disability insurance benefits] claim on the merits rather than invoking res judicata to bar it, this Court has subject matter jurisdiction to review that decision."), *report and recommendation adopted*, No. 4:10cv146, 2012 WL 78398, at \*1 (E.D. Va. Jan. 10, 2012), *aff'd*, 474 F. App'x 174 (4th Cir. 2012).

The Fourth Circuit has commented that reviewing courts must look to the final decision of the Secretary or Commissioner to determine whether a claim was reopened, and not simply consider whether other decisions in the chain leading to that final decision may have reopened a claim:

> Pointing to language in *McGowen* to the effect that jurisdiction to review exists whenever the determination has in fact been reopened "at any administrative level," [] Hall notes that here the ALJ did explicitly reopen the initial determination. Hence, she contends, the district court had subject matter jurisdiction under *McGowen*'s rule. We disagree. Hall misconstrues the import of the *McGowen*

21

> passage. The reference to the possibility that jurisdiction-conferring administrative
> reopening might occur "at any administrative level" simply took into account that
> because Appeals Council review is discretionary, some lower level administrative
> decisions may operate as "final" reviewable decisions of the Secretary. *See* 20
> C.F.R. § 404.981.   But a *district court has jurisdiction to review only the
> Secretary's final decision*, and when, as here, that is the decision of the Appeals
> Council, *it is to that decision the court must look to determine whether* under
> *McGowen*'s rule *it involved an actual reopening* of an earlier determination.

*Hall v. Chater*, 52 F.3d 518, 520–21 (4th Cir. 1995) (emphases added).[17]

Accordingly, for purposes of defeating the bar against reviewing decisions that were based

on *res judicata*, a claim is not reopened if the final decision of the Secretary or Commissioner does

no more than engage in a "simple inquiry" to "look far enough into the proffered factual and legal

support to determine whether it is the same claim." *Id.* at 521 (citation and quotation marks

omitted).

Here, the Appeals Council denied Crawford's request for review of the ALJ's February 10,

2017 dismissal, so the ALJ's decision is the Commissioner's final decision in this matter.[18] R. 1;

---

[17] It is worth noting, for example, that the Fourth Circuit's analysis of whether McGowen's claim
had been reopened began with the ALJ-level decision, and not with SSA's earlier determination,
seemingly on the merits, that the second application did not present evidence that McGowen was
a surviving child under the Social Security Act. *McGowen*, 666 F.2d at 67–68. Thus, even if the
initial decision by a disability examiner regarding an application does not rely on *res judicata*
based on an earlier claim, that later decision does not necessarily constitute a reopening of the
earlier claim. Instead, determining whether a claim was reopened depends on the decisions at the
ALJ level and above. *See, e.g., id.* at 67–68 (analyzing the decisions of the ALJ and Appeals
Council to determine whether claim was reopened); *Huff*, 126 F. App'x at 87 (analyzing the
decision of an ALJ to determine whether claim was reopened); *Hughes v. Chater*, No. 95-3033,
1997 WL 303231, at *3 (4th Cir. June 5, 1997) (analyzing the decision of the Appeals Council to
determine whether claim was reopened); *Cooper v. Chater*, No. 95-2830, 1996 WL 671723, at *2
(4th Cir. Nov. 21, 1996) (analyzing the decision of an ALJ to determine that a claim was not
reopened).

[18] There is some indication that the disability examiners decided Crawford's second application
based on its merits rather than by applying *res judicata*, because the initial examiner to review that
application determined that Crawford's "condition was not disabling on any date through
[December 31, 2010]." R. 256, 281. Likewise, on reconsideration, another examiner denied the

ECF No. 6-1. *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless" revised or appealed to district court).

The ALJ determined that "no new and material evidence has been submitted" since the September 16, 2011 denial of Crawford's first application, and the "additional evidence submitted with this [second] claim is either duplicative, already referenced in the medical records submitted in the prior claim or for treatment after the date the claimant was last insured for disability benefits." R. 276–77. As noted above, the new allegations regarding sleep apnea and cervical spine surgeries in 2014 and knee surgery in 2015 arose well after Crawford's date last insured. The ALJ also expressly stated that "none of the conditions for reopening set forth in 20 [C.F.R. §] 404.988 is present in this case," there was no reason to extend the deadline for requesting review because Crawford did not allege a mental impairment, and, "hav[ing] considered whether this determination should remain final . . . [he found] no reason why it should not." R. 276. The ALJ concluded that "the claimant's rights on the same facts and on the same issues are involved and the doctrine of *res judicata* applies," and therefore denied the request for a hearing. R. 277.

Accordingly, the ALJ did not reopen Crawford's first claim, because his review of the evidence submitted was only to determine whether her second claim was the same as the first, and

---

second claim after noting that the evidence in the record was "sufficient and consistent to support the proposed determination," and Crawford's "condition was not disabling on any date through [December 31, 2010], when [she was] last insured for disability benefits." R. 271, 294. However, the decisions of these examiners are not the ones subject to review by this Court. *See* 20 C.F.R. § 404.981 (decision of ALJ or Appeals Council is binding), and 42 U.S.C. § 405(g) (district court reviews only the final decision of SSA).

because he expressly declined to reopen the claim because none of the factors to do so was established. Because SSA did not reopen its determination regarding Crawford's first application, this case is not within the second *McGowen* situation that would provide jurisdiction to review an SSA decision based on *res judicata*.

In conclusion, this case does not involve either situation that would constitute an exception to the rule against reviewing determinations based on *res judicata*, because (1) the same claims were involved in both the first and the current application for benefits, and (2) SSA did not reopen its determination regarding Crawford's first application. The Commissioner's decision to apply administrative *res judicata* deprives this Court of jurisdiction to review Crawford's complaint pursuant to 42 U.S.C. § 405(g). *McGowen*, 666 F.2d at 65, 68–69. The complaint should therefore be dismissed.

### III.     RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that the Commissioner's motion to dismiss for lack of jurisdiction, ECF No. 11, be **GRANTED,** and Crawford's complaint, ECF No. 6, be **DISMISSED**.

### IV.     REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of

the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
February 21, 2019

25